```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
                                       :
TRANE INTERNATIONAL INC. f/k/a         :
AMERICAN STANDARD INTERNATIONAL, INC.  :
and TRANE U.S., INC.,                  :
                                       :
                    Plaintiffs,        :
                                       :        21cv4497 (DLC)
             -v-                       :
                                       :        OPINION AND ORDER
CALENDATDORES DE AMERICA, S.A. DE C.V. :
f/k/a GRUPO CALOREX, S. DE R.L. DE     :
C.V., and ARISTON THERMO MEXICO S.A.   :
DE C.V.,                               :
                                       :
                    Defendants.        :
                                       :
-------------------------------------- X
```

APPEARANCES:

For plaintiffs:
Cyrus Morton
Robins Kaplan LLP
800 LaSalle Ave
Ste 2800
Minneapolis, MN 55402

Derrick Carman
Robins Kaplan LLP
1325 Avenue of Americas
Suite 2601
New York, NY 10019

For defendants:
Jason Marcos Otazu Jara
Lisa C. Cohen
Schindler Cohen & Hochman LLP
100 Wall Street
Ste Floor 15
New York, NY 1005

DENISE COTE, District Judge:

Plaintiffs Trane International Inc. and Trane U.S., Inc. ("Trane") have sued defendants Calentadores de America, S.A. de C.V. ("Calentadores") and Ariston Thermo Mexico S.A. de C.V. ("AT Mexico") for trademark infringement and breach of a trademark license agreement.  The defendants have moved to dismiss the complaint.  For the following reasons, their motion is granted.

## Background

The following facts are taken from the First Amended Complaint ("FAC") and are assumed to be true for the purposes of this motion.  The plaintiffs are U.S. corporations; the defendants are Mexican corporations.

Trane manufactures air conditioning, heating, and ventilation systems.  Trane maintains trademarks on many of its brands, including the word mark "American Standard."  In December of 2000, Trane entered into a trademark license agreement (the "License") with Calentadores in connection with the manufacture of water heaters within Mexico, the United States and Canada, and their sale in the United States and Canada.[1]  The License granted Calentadores "and its Affiliates an

---

[1] A 2014 amendment to the License recognized that Calentadores was the successor to the licensee who executed the License in 2000, and expanded the territory covered by the License.

exclusive license to use" the American Standard trademark in connection with the "marketing, distribution, and sale" of Trane's water heaters.  The License defines an "Affiliate" of a company as "any company which, through ownership of voting stock directly or indirectly is controlled by, under common control with, or in control of such company, the term 'control' being used in the sense of the power to elect directors."

The License contains a non-assignment provision stating that "no right or obligation" under the License "shall be assigned, transferred, sublicensed, or otherwise disposed of" without Trane's written consent.  Additionally, pursuant to the License, Calentadores agreed "that it will not use and will cause its Affiliates or Sublicensees not to use" the American Standard trademark "in close proximity to or in association with any other mark not licensed hereunder."

The License has a New York choice of law clause.  It also includes a forum selection clause in which the parties to the License submit to the non-exclusive jurisdiction of the United States District Court for the Southern District of New York.

On April 30, 2019, AT Mexico purchased all but two shares of Calentadores.  AT Mexico is a part of Ariston Group, which sells various brands of water heaters.  Ariston Group's website lists the brands within its portfolio, including American Standard.  Trane also alleges that the defendants operate the

@_ASWH Twitter account with the name "American Standard Water
Heaters."  The @_ASWH account has published a Tweet describing
the account as belonging to the Ariston Group, using Ariston
Group's name and logo.

Trane filed this action on May 19, 2021, alleging that AT
Mexico's acquisition of Calentadores automatically transferred
Calentadores's rights under the License to AT Mexico, thereby
breaching the License's non-assignment provision.  The
defendants moved to dismiss the complaint on February 11, 2022
for failure to state a claim and lack of personal jurisdiction
over AT Mexico.  On March 1, the Court issued an Order granting
Trane until March 10 to file an amended complaint.  The Order
warned Trane that it would likely have no further opportunity to
amend its complaint.

Trane amended its complaint March 10, adding allegations
relating to the @_ASWH Twitter account, and bringing a claim for
trademark infringement in violation of the Lanham Act.  The
defendants renewed their motion to dismiss the complaint on
April 1.  The motion became fully submitted on May 6.

## Discussion

I.   Personal Jurisdiction

AT Mexico has moved to dismiss the claims against it for
lack of personal jurisdiction pursuant to Fed. R. Civ. P.
12(b)(2).  "To defeat a motion to dismiss for lack of personal

jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 68, 81 (2d Cir. 2018) (citation omitted).  To make such a showing, the plaintiff must allege sufficient facts to establish that there is a basis for jurisdiction under the law of the forum State, and that "the exercise of personal jurisdiction comports with due process." Id. at 82.  See also Fed. R. Civ. P. 4(k)(1)(A).

Personal jurisdiction over a party comports with due process if the party has agreed to a forum-selection provision. See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 85 (2d Cir. 2013).  While a non-signatory to a contract containing a forum-selection clause may be able to enforce the clause against a signatory when the non-signatory is "closely related" to a signatory, the obverse is not true.  A signatory's ability to enforce such a clause against a non-signatory is limited.  See Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 723 & n.10 (2d Cir. 2013).

AT Mexico is not a signatory to the License and therefore not subject to its forum-selection clause in the ordinary course.  Trane contends that personal jurisdiction exists over AT Mexico nonetheless because it is closely related to Calentadores, which is a signatory.  Trane argues that AT Mexico is closely related to Calentadores because AT Mexico is its

majority owner.  Trane also asserts that AT Mexico is more than
just a passive owner of Calentadores, alleging that AT Mexico
sent an email to Trane to confirm the royalty payments due under
the License.

These allegations do not make AT Mexico subject to the
License's forum-selection clause.  A forum-selection clause in
an agreement may be enforceable against a non-signatory where
the non-signatory is otherwise subject to the agreement -- for
instance, when the non-signatory is a successor in interest to a
signatory.  Id. at 722.  But AT Mexico is not a successor to
Calentadores.  Calentadores remains the licensee.  Accordingly,
the forum-selection clause may not be enforced against AT
Mexico.

Additionally, although Trane does not address the statutory
basis for personal jurisdiction, the allegations in the FAC are
insufficient to support jurisdiction over AT Mexico under New
York's long-arm statute.  Trane alleges that AT Mexico has
infringed on its trademark by using the mark in a manner
prohibited under the License.  But the infringement of a
company's intellectual property is insufficient to justify
personal jurisdiction under New York's long-arm statute when the
neither the plaintiff nor the defendant are located in New York.
Troma Ent., Inc. v. Centennial Pictures, Inc., 729 F.3d 215,
218-21 (2d Cir. 2013) (copyright).  Here, neither the plaintiffs

nor the defendants are located in New York.  New York's long-arm statute therefore does not permit jurisdiction over AT Mexico.

Trane requests that, if it has not plausibly alleged sufficient facts to establish personal jurisdiction over AT Mexico, it be permitted to engage in jurisdictional discovery regarding the relationship between AT Mexico and Calentadores. Trane was given an opportunity to amend its pleading, has not plausibly alleged that AT Mexico is bound by the License's forum-selection provision, and has asserted no other theory of personal jurisdiction.  Trane's request for jurisdictional discovery is therefore denied, and its claims against AT Mexico are dismissed.  See Best Van Lines, Inc. v. Walker, 490 F.3d 239, 255 (2d Cir. 2007).

II.  Failure to State a Claim

The defendants move to dismiss the FAC for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  In order to survive a motion to dismiss for failure to state a claim, "[t]he complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'"  Green v. Dep't of Educ. of City of New York, 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiffs."  Melendez v. City of New York, 16 F.4th 992, 1010 (2d Cir. 2021) (citation omitted).  For the purposes of a motion to dismiss, the complaint "includes any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  Coal. for Competitive Elec., Dynergy Inc. v. Zibelman, 906 F.3d 41, 49 (2d Cir. 2018) (citation omitted).

A. Breach of Contract

Trane brings a claim for breach of contract against the defendants, arguing that the License's non-assignment provision was breached when AT Mexico acquired Calentadores.  Trane points to language in paragraph 1(c) of the License granting Calentadores "and its Affiliates" a license to use the American Standard mark.  Trane argues that, when AT Mexico acquired Calentadores, it thereby became an "Affiliate" of Calentadores, and acquired rights under paragraph 1(c).  Paragraph 11 of the License, however, prohibits the assignment or transfer of rights under the License without Trane's prior written consent.  Trane therefore argues that AT Mexico's acquisition of Calentadores breached the non-assignment provision.

Trane's breach of contract claim must be dismissed, because the FAC does not plausibly allege that AT Mexico was transferred or assigned any rights under the License when it acquired Calentadores.  In the absence of "explicit language" demonstrating otherwise, a contract granting a license to a party and its "affiliates" only applies to persons who are affiliates "at the time the contract was executed."  Ellington v. EMI Music, Inc., 24 N.Y.3d 239, 246 (2014).  Trane does not allege that AT Mexico became an "Affiliate" of Calentadores until almost two decades after the License was executed. Accordingly, AT Mexico did not acquire any rights under the License when it acquired Calentadores.

Trane argues that the language in the License unambiguously applies to future "Affiliates."  But the License's definition of "Affiliates" is phrased in the present tense, applying to any company that "is controlled by, under common control with, or in control of" Calentadores (emphasis added).  See id. at 247 (noting that "the use of present tense language in the Agreement . . . demonstrates that the Agreement would bind only affiliates in existence at the time of the Agreement.").  Trane attempts to distinguish Ellington by pointing out that the grant of rights in the License applies "[s]o long as this Agreement remains in effect."  But this language only shows that the grant of rights

is coterminous with the License, not that it applies to future affiliates.

Trane also argues that the decision in Ellington should be narrowly construed so as not to permit parties to circumvent contractual obligations through the creation of new affiliates. But Trane does not explain how such gamesmanship is at issue in this case. Calentadores remains bound by the License, and is available for suit if it breaches the License.

Additionally, Trane's construction of the term "Affiliates" makes little sense when read alongside the License's non-assignment provision, and contracts must be "read as a whole." Postlewaite v. McGraw-Hill, Inc., 411 F.3d 63, 67 (2d Cir. 2005). Paragraph 11 of the License states that "no right or obligation" of Calentadores or its Affiliates "shall be assigned, transferred, sublicensed, or otherwise disposed of" without Trane's written consent. Accordingly, under Trane's reading of the License, paragraph 1(c) of the License automatically assigns rights under the License to any party that acquires or is acquired by Calentadores, but paragraph 11 of the License simultaneously prohibits such a transfer.

Trane suggests that this is, in fact, the intended effect of the License, and that the License therefore prohibits changes of control. Courts are reluctant, however, to construe a non-assignment provision to prohibit a change of control unless the

provision contains unambiguous language to that effect.  See VDF
FutureCeuticals, Inc. v. Stiefel Labs., Inc., 792 F.3d 842, 846
(7th Cir. 2015); MassMutual Asset Fin. LLC v. ACBL River
Operations, LLC, 220 F. Supp. 3d 450, 456 (S.D.N.Y. 2016).
Trane's construction, on the other hand, would be roundabout
even without this presumption -- under Trane's reading, the
License limits change of control only by creating an automatic
transfer of rights that it prohibits at the same time.  This is
not a plausible construction of the License.  Trane's breach of
contract claim must therefore be dismissed.

B. Trademark Infringement

The defendants have moved to dismiss Trane's claim for
trademark infringement.  To state a claim for trademark
infringement under the Lanham Act, a plaintiff must plausibly
allege that "(1) it has a valid mark that is entitled to
protection under the Lanham Act; and that (2) the defendant used
the mark, (3) in commerce, (4) in connection with the sale or
advertising of goods or services (5), without the plaintiff's
consent."  1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d
400, 407 (2d Cir. 2005) (citation omitted).  Additionally, the
plaintiff must allege that the "defendant's use of the mark is
likely to cause confusion as to the affiliation, connection, or
association of defendant with plaintiff, or as to the origin,
sponsorship, or approval of the defendant's goods, services, or

commercial activities by plaintiff." Id. (quoting 11 U.S.C. §
1125(a)(1)(A)).

The FAC plausibly alleges several of these elements.  The
defendants do not contest the validity of the mark.  And the use
of the American Standard mark on the Ariston Group website and
the @_ASWH Twitter account constitutes use in commerce, in
connection with the advertising of goods.  See RescueCom Corp.
v. Google Inc., 562 F.3d 123, 130 (2d Cir. 2009) (holding that
Google's placement of an advertisement in a search result
constituted a use in commerce).  Additionally, the use of the
mark near other brands did not have Trane's consent and the
License prohibits the use of the mark "in close proximity to or
in association with" other marks.  Trane, however, does not
bring an action for breach of the License in connection with
these uses.[2]  Accordingly, it must still plausibly allege that
the defendants used its mark in a manner likely to cause
confusion.

To determine whether a use of a mark is likely to cause
confusion, a court must consider eight factors first specified

---

[2] Trane likely cannot state a claim for breach of the License
based on this use of the mark, because Trane has not alleged
that it complied with a provision of the License requiring it to
provide Calentadores at least 90 days' notice of any breach, and
a reasonable opportunity to cure the breach.

in <u>Polaroid Corp v. Polarad Elecs. Corp.</u>, 287 F.2d 492 (2d Cir. 1961).  These factors are:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

<u>Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC</u>, 823 F.3d 153, 160 (2d Cir. 2016).

When applying the <u>Polaroid</u> test, a district court must "engage in a deliberate review of each factor, and, if a factor is inapplicable to a case, explain why."  <u>Id.</u> (citation omitted).  The Second Circuit has recognized, however, that in certain cases, "many of the <u>Polaroid</u> factors are a bad fit."  <u>Id.</u> at 168.  In particular, many of the <u>Polaroid</u> factors are less relevant to cases involving nominative use -- that is, "use of another's trademark to identify, not the defendant's goods or services, but the plaintiff's goods or services."  <u>Id.</u> at 165 (quoting McCarthy on Trademarks and Unfair Competition § 23:11 (5th ed. 2022)).  The Second Circuit has therefore held that, in cases involving nominative use, a district court must consider the following three factors in addition to the <u>Polaroid</u> factors:

> (1) whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or

service and the defendant's product or service, that
is, whether the product or service is not readily
identifiable without use of the mark; (2) whether the
defendant uses only so much of the plaintiff's mark as
is necessary to identify the product or service; and
(3) . . . whether the defendant's conduct or language
reflects the true or accurate relationship between
plaintiff's and defendant's products or services.

Id. at 168.

Considering the Polaroid and nominative use factors, the
FAC fails to plausibly plead that the defendants' use of the
American Standard mark was likely to result in confusion.  As in
other nominative use cases, many of the Polaroid factors are a
"bad fit" here.  Id.  The "strength of the trademark",
"similarity of the marks", and "evidence that the imitative mark
was adopted in bad faith" are not relevant to the dispute at
issue, because the defendants have used the plaintiffs' mark.
Similarly, the third, fourth, and seventh Polaroid factors do
not apply to this claim, as the defendants did not use the mark
to refer to a competing product, but to the plaintiffs'
products.

The remaining Polaroid factors also provide little insight
into the likelihood of confusion.  Although "actual confusion is
not necessary to establish a likelihood of confusion," Trane has
alleged no actual consumer confusion resulting from the
defendants' use of the mark.  Starbucks Corp v. Wolfe's Borough
Coffee, Inc., 588 F.3d 97, 117 (2d Cir. 2009).  Additionally, in

the absence of any evidence or allegations regarding consumer sophistication, the consumer sophistication factor merits little weight.  See id. at 119.

The nominative use factors underscore that Trane has not plausibly alleged a likelihood of consumer confusion.  First, the use of the American Standard mark is necessary to describe both the plaintiffs' product and the defendants' product, as Calentadores has been given a license to sell the plaintiffs' product branded with that mark.  Nor has Trane plausibly alleged that the defendants have used its mark "too prominently or too often."  Int'l Info Sys. Sec. Certification Consortium, Inc., 823 F.3d at 168 (citation omitted).  On the contrary, Trane's objection is that the defendants used other marks too prominently.  If Calentadores had used only the American Standard mark, that would have been permitted under the License.

Finally, and most importantly, the defendants' use of the American Standard mark accurately reflected the relationship between Trane and the defendants.  The FAC alleges that the defendants listed American Standard among the brands of water heaters they sold, and that the @_ASWH account created an association between the American Standard trademark and both AT Mexico and Ariston Group.  But the FAC does not plausibly allege that this was misleading.  On the contrary, the FAC makes clear that AT Mexico and Ariston Group are parent companies of

15

Calentadores, which Trane has licensed to market and distribute
American Standard water heaters.  The uses of the mark alleged
in the complaint therefore "reflect the true and accurate
relationship between plaintiff and defendant's products or
services."  Id. at 166 (citation omitted).

Trane argues that the defendants' use of the mark is
nevertheless misleading, because it implies that Trane approved
of that use of the mark, even though the License prohibits it.
But this argument equates the consent and confusion element of a
false association claim.  The nominative use of a plaintiff's
mark without the plaintiff's permission does not necessarily
violate the Lanham Act unless it is otherwise confusing.  See
Rescuecom Corp., 562 F.3d at 130.  Here, Trane has not plausibly
alleged that the defendants' use of the mark would be confusing
as to "source . . . affiliation, sponsorship, or endorsement by
the mark holder," because Trane has in fact licensed
Calentadores to market and distribute water heaters using the
American Standard mark.  Int'l Info Sys. Sec. Certification
Consortium, 823 F.3d at 169.  Trane's claim for false
association is therefore dismissed.

III. Leave to Amend

Trane requests that, in the event its claims against AT
Mexico are dismissed for lack of personal jurisdiction, it be
granted leave to amend the FAC.  In general, leave to amend

16

should be "freely give[n] when justice so requires."  Fed. R.
Civ. P. 15(a)(2).  Leave to amend may be denied, however, "for
good reason, including futility, bad faith, undue delay, or
undue prejudice to the opposing party."  Eastman Kodak Co. v.
Henry Bath LLC, 936 F.3d 86, 98 (2d Cir. 2019) (citation
omitted).

Leave to amend is not appropriate here.  Trane's theory of
personal jurisdiction -- that AT Mexico is "closely related" to
Calentadores and therefore subject to the License's forum-
selection clause -- is incorrect as a matter of law and cannot
be cured by additional factual allegations.  Additionally, Trane
was already provided an opportunity to amend its complaint after
the defendants initially moved to dismiss for lack of personal
jurisdiction, and Trane was warned that it would likely have no
further opportunity to amend.  Finally, Trane has not provided
any proposed amendment or explained how its theory could be
cured by additional allegations.  See TechnoMarine SA v.
Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff
need not be given leave to amend if it fails to specify . . .
how amendment would cure the pleading deficiencies in its
complaint.").  Accordingly, leave to amend is denied.

## Conclusion

The defendants' April 1, 2022 to dismiss is granted.   The Clerk of Court shall enter judgment for the defendants and close the case.

Dated:      New York, New York
            May 13, 2022

                              _____
                              DENISE COTE
                       United States District Judge